DOLPH F. MATCHINSKE AND MARILYN R. MATCHINSKE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Matchinske v. Commissioner
Docket No. 22194-86.
United States Tax Court
T.C. Memo 1987-309; 1987 Tax Ct. Memo LEXIS 309; 53 T.C.M. (CCH) 1211; T.C.M. (RIA) 87309; June 23, 1987. Christopher M. Laquer, for the petitioners. Joyce L. Sugawara, for the respondent. GERBER
MEMORANDUM OPINION GERBER, Judge: Petitioners, on December 23, 1986, moved to amend their petition in this case and respondent objected.[1] The issue presented is whether the petition placed in issue all taxable years which were set forth in the statutory notice of deficiency. If we *310 find that any of the taxable years in the statutory notice were not petitioned, we would not have acquired jurisdiction over the omitted years. Sections 6212 and 6213; [2]. Respondent, by a statutory notice of deficiency dated April 10, 1986, determined deficiencies in petitioners' 1979, 1980, 1981 and 1982 taxable years. [3] Respondent disallowed a $126,012 "partnership loss" for petitioners' 1982 taxable year which generated the vast majority of the net operating loss which petitioners had carried back to 1979, 1980 and 1981 (hereinafter "carryback years"). [4] The treatment of the carryback years in the statutory notice reflects that they were included solely because of the 1982 net operating loss. Petitioners timely petitioned this *311 Court on June 23, 1986, and specifically referenced the $126,012 partnership loss and the 1982 taxable year in their petition. [5] In their allegations of error and statement of facts upon which they relied, petitioners made numerous detailed allegations concerning the entire $126,012 partnership loss. *312 Respondent's answer, filed August 14, 1986, contained allegations that adjustments other than the $126,012 partnership loss were made for 1982, but that the partnership loss was the only one disputed by petitioners. Respondent's answer admitted that 1982 was in dispute, but made no specific mention of the taxable years 1979, 1980 and 1981. [6] In the prayer, respondent sought approval only of the determination of tax for 1982. Petitioners, on September 29, 1986, caused a reply to be filed admitting that they were disputing only the $126,012 partnership loss. Further, petitioners controverted respondent's implication or inference that only 1982 was in dispute, by alleging that the $126,012 relates to all four years, which petitioners alleged were in dispute or issue. At some point, relatively shortly after the petition was filed, respondent assessed the deficiencies for the carryback years and petitioners apparently did not become aware of the assessments until after the *313 filing of their reply. On December 23, 1986, petitioners moved to "Amend Petition" to specifically include reference to the carryback years in the petition. Petitioners alleged that they intended to contest the entire $126,012 partnership loss and that their failure to specifically enumerate or reference the carryback years was inadvertent. [7]
In his January 27, 1987, Notice of Objection, respondent contends that petitioners did not (within 90 days) petition the carryback years and that this Court lacks jurisdiction, leaving petitioners without a remedy in this Court. [8] On these facts, we must decide whether the original petition placed the carryback years in issue. If the carryback years were not placed in issue by the original petition, we would be without jurisdiction. ; ; Rules 34, 40 and 41. Respondent relies on *314 these cases and some of the rule references in support of his position that petitioners did not provide "objective indications" of intent required to confer jurisdiction over the carryback years. In , respondent had determined deficiencies for 1919 and 1920 regarding an installment transaction. John R. Thompson Company's petition clearly and purposely included reference to 1919 and it was the respondent who contended that 1920 was in issue because the adjustments to 1920 involved the same transaction as 1919. [9] A review of the "Thompson petition" leaves the reader with the unmistakable conclusion that the 1919 year was the only year being petitioned.
*315 In , respondent determined deficiencies in four taxable years and petitioner O'Neil petitioned only three of the years. O'Neil specifically alleged error as to three of the years and explained later in the petition that, "[He] pleaded guilty [in Federal District Court to the year not petitioned] on the condition that [the petitioned three years] would be dropped." O'Neil went on to explain that the statutory notice "did not reflect the agreed upon dismissal * * * [and he requested] that the agreement to drop the deficiencies [for the petitioned years] be honored." We reasoned, "There is nothing in the petition indicating that the petitioner was contesting any issue for such year." . It has been this Court's policy to be liberal in treating as petitions all documents filed by taxpayers within the 90-day period, where the documents were intended as petitions. ; . We cannot, however, acquire jurisdiction of additional taxable years or periods *316 by means of an amended petition filed beyond the 90-day period. , affg. an order of this Court; . See Rule 41(a). Although petitioners' intentions were not set forth concisely and the language is somewhat inartful, the original petition, considered in its entirety, reflects the intent to place in issue the loss year and the carryback years. We reach this conclusion based upon the following major considerations: (1) The petitioners' allegation of error attempted to place the entire $126,012 loss in issue and the allegations of fact fully support this conclusion. The 1982 net operating loss is substantially attributable to the $126,012 partnership loss and, of necessity, can only be utilized (under these facts) by means of net operating loss carryback deductions to 1979, 1980 and 1981. (2) The unique interrelationship between a loss year and years to which the loss may be carried, coupled with the fact that the carryback years had no other issues, provides added meaning to petitioners' allegations. This is unlike a continuing transaction *317 for which facts may vary in a latter taxable year which would be the subject of a separate proceeding. . Here, there are no substantive issues in the carryback years, merely computational considerations regarding the amount of absorption of the loss generated in the 1982 taxable year. (3) The petition generally followed the format of the statutory notice. The statutory notice focused upon the 1982 taxable year in which the loss deduction was generated and perfunctorily included adjustments to the carryback years. The petition also focused upon the 1982 year and questioned the disallowance of adjustments in a manner sufficient to actually and implicitly include the carryback years in dispute. [10]
*318 Under the circumstances of this case, petitioners' motion to amend their petition will be granted. [11]
To reflect the foregoing, An appropriate order will be issued.
Footnotes
1. A hearing was held on Apr. 20, 1987, at Pasadena, California, where the parties presented oral arguments. The parties presented their positions in the motion, objection to the motion, and attached documents. ↩
2. All statutory references are to the Internal Revenue Code of 1954 as amended. All rule references are to this Court's Rules of Practice and Procedure.↩
3. The face page of the statutory notice reflects all four taxable years and income tax deficiency amounts. The explanatory schedules, which are a part of the statutory notice document, refer only to the 1982 taxable year in describing the adjustments, because 1982 is the year in which the net operating loss was generated. The computational schedules reflect several adjustments for 1982, but only one adjustment each for 1979, 1980 and 1981 all of which were described, as follows: "NOL C/B from 1982." ↩
4. The total amount of disallowed adjustments for 1982 is shown as $132,693, which includes the $126,012 partnership loss. The disallowed net operating loss carryback deductions for 1979, 1980 and 1981 total $171,495. The parties were not able to explain this discrepancy, but respondent attempted to capitalize on the difference by arguing that petitioners intended to petition less than all of the adjustments because $126,012 falls short of the cumulative total of the carryback loss deductions. We find respondent's argument to be without merit, because of the unexplained nature of the difference and because $126,012 is sufficient to generate controversy with respect to substantially more than is involved in the 1982 taxable year. ↩
5. Numerous mentions were made concerning the $126,012 and 1982 taxable year. The petitioners' allegation of error was, however, somewhat inartful because of a reference to an 1982 income tax deficiency of $126,012 (the loss adjustment) rather than the $7,327 income tax deficiency that respondent determined for 1982. Petitioners used the following language: "The deficiencies as determined by the Commissioner are in income taxes for the calendar year 1982, in the amount of $126,012.00 plus interest and penalties of which $126,012.00, plus interest and penalties is in dispute."↩
6. We do not infer by this reference that respondent was obligated to comment about what was thought to be uncontested years, but it would have been more helpful to petitioners if respondent had commented.↩
7. By means of a written declaration, petitioners' attorney, who prepared and signed the petition, stated that he intended to contest the entire $126,012 adjustment and all four taxable years, including the carryback years.↩
8. We assume that under respondent's position, petitioners would be able to sue for a refund after payment of the tax and that the forum for doing so would be in the United States District or Claims Courts. It would be a useless waste of heavily burdened judicial resources to require two different forums to address this matter, where our opinion as to 1982 would be completely dispositive of the three carryback years.↩
9. Apparently respondent had put all of his eggs in the "1919 basket" and had not taken an alternative position for 1920, which would have been barred by the statute of limitations. We surmise that respondent determined that the transaction did not qualify for installment treatment and included the entire gain in 1919.↩
10. We are a Court of limited and statutorily created jurisdiction. See section 7442; ; ; . The unique nature of this case and the issue (carryback loss) involved have played a role in reaching our conclusion. Other taxpayers who petition this Court are cautioned to be concise and explicit in their pleadings because we feel the circumstances of this case are unique.↩
11. Actually, amendment in the jurisdictional sense is unnecessary, but will be helpful to permit the parties to more concisely frame the issues and amounts in dispute.↩